## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SHARON HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 8435 |
| | ) | |
| VILLAGE OF CALUMET PARK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Village of Calumet Park's (Village), Defendant Joseph Dupar's (Dupar), and Defendant Mark Davis' (Davis) motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted in its entirety.

## BACKGROUND

Plaintiff Sharon Harris (Harris) was allegedly hired by the Village in 1995 as a patrol officer with the Village police department (Department). Harris contends that over the course of the following fifteen years she received promotions and was

1

ultimately promoted to the Commander position. In 2002, Davis was allegedly hired as the Police Chief for Department. Harris claims that Davis harassed her and discriminated against her because she is a woman. Harris also claims to have overheard a conversation on a speaker phone in which Davis referred to Harris by a certain derogatory term.

Harris contends that she complained about the alleged harassment and discrimination to DuPar, the Village mayor, and that afterwards she was subjected to increased discrimination and retaliation by Davis. Davis allegedly divested Harris of her job responsibilities and assigned them to subordinate male officers. Harris contends that in further retaliation for her complaint, her Commander position was eliminated and she was demoted to patrol officer in September 2010.

Harris includes in her complaint a gender discrimination claim brought under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* (Count I), a Title VII hostile work environment claim (Count I), a claim alleging a violation of her constitutional equal protection rights brought pursuant to 42 U.S.C. § 1983 (Section 1983) (Count II), a Title VII retaliation claim (Count III), and a Section 1983 *Monell* claim (Count IV). The court notes that the complaint filed by Harris inaccurately lists the retaliation claim as Count V and the *Monell* claim as Count XI, but that it is clear from the allegations and numbered paragraphs in the

complaint that there are only four counts being brought by Harris. Defendants move for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

# DISCUSSION

## I.  Local Rule 56.1

Harris, in responding to Defendants' statement of material facts, makes certain objections, contending that Defendants failed to comply with Local Rule 56.1. Harris argues that the paragraphs provided by Defendants are not sufficiently concise.  However, Local Rule 56.1 does not specifically limit each paragraph to one or two allegations as proposed by Harris (Ans. SJ 8), and Harris has not cited any controlling precedent that supports such a conclusion.  Defendants' statement of material facts is sufficiently concise and unambiguous that Harris should have been able to properly respond in accordance with Local Rule 56.1 and Defendants' statement of material facts complies with Local Rule 56.1.  The court also notes that although Harris argues that a paragraph in a statement of facts should be limited to one or two allegations, ironically, Harris' own statement of additional facts failed to follow her own arguments.  (SAF Par. 12, 16, 19).

## II.  Title VII Gender Discrimination Claim

Defendants argue that Harris has not pointed to sufficient evidence to prevail on her Title VII gender discrimination claim.  A plaintiff bringing a Title VII discrimination claim can defeat a defendant's motion for summary judgment under

the direct or indirect methods of proof. *Naficy v. Illinois Dept. of Human Services*, 697 F.3d 504, 509-10 (7th Cir. 2012).


   A.  Direct Method of Proof

   Harris argues that she has pointed to sufficient evidence to proceed on her Title VII gender discrimination claim under the direct method of proof.  Under the direct method of proof, a plaintiff must "present 'direct or circumstantial evidence that creates a convincing mosaic of discrimination on the basis of'" the protected characteristic. *Good v. University of Chicago Medical Center*, 673 F.3d 670, 674-75 (7th Cir. 2012)(quoting *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009)); *see also Naficy*, 697 F.3d at 509-10 (explaining that under the "'direct method,' a plaintiff must marshal sufficient evidence, either direct or circumstantial, that an adverse employment action was motivated by discriminatory animus," and that "[c]ircumstantial evidence may be sufficient to make out a direct claim of discrimination when the plaintiff presents enough evidence to allow a reasonable factfinder to conclude that the adverse employment action was taken as a result of the plaintiff's" protected characteristic).

   Harris points to no direct evidence of discrimination and relies on several pieces of circumstantial evidence that she contends supports her case under the direct

method of proof.  Harris contends that DuPar testified that the Personnel Action form completed when Harris was moved from the Commander position back to the patrol officer position was used as part of a "corrective action" or "disciplinary" action.  (SAF Par. 14).  Harris also contends that such an admission is an admission that DuPar used the Personnel Action form to discriminate and retaliate against Harris.  However, Harris mischaracterizes DuPar's testimony.  Harris selectively quotes the words "corrective action" and "disciplinary" used by Dupar when discussing the various reasons a Personnel Action form might be used, and Harris takes the words out of context.  No reasonable analysis of DuPar's deposition testimony would indicate that DuPar admitted to signing the Personnel Action form for Harris to discriminate against her because of her gender or retaliate against her.  DuPar clearly testified that a Personnel Action form is used if there is a personnel action such as a "change in pay" or an issue that must be addressed with the union.  (DuPar Dep. 89-90).  DuPar merely indicated in response to an inquiry by Harris' counsel that such a form may be needed when there is a disciplinary action taken against an employee.  (DuPar Dep. 89-90).  DuPar was not specifically asked whether the Personnel Action form used to move Harris from the Commander position to the patrol officer position was a disciplinary action.  In fact, DuPar ultimately indicated at his deposition that Harris was removed from the Commander

position because the position had been eliminated by the Village Board, not because Harris was being disciplined. (DuPar Dep. 93).

Harris also asserts that Davis made certain remarks about her that indicate an animus against her because she is a woman. Harris contends that on one occasion, Davis told another officer on a speaker phone to "stay out of that b---'s office," and Harris contends that Davis called her "baby girl," which made her feel embarrassed. (SF Par. 25); (SAF Par. 5). However, such allegations, even if true, fail to create a convincing mosaic of discrimination. Nor does Harris tie the use of the phrase "baby girl" to any alleged discriminatory conduct. Harris also contends that she can proceed under the direct method of proof based on the fact that during Davis' absence, DuPar appointed Gerald Corrigan (Corrigan) to act in his place instead of Harris. (Ans. SJ 13). Harris argues that she outranked Corrigan. However, as will be explained below, the undisputed facts show that there were ample reasons to conclude that Harris was failing to properly perform her job as Commander. It is also undisputed that Corrigan had been a Sergeant for six years and that Harris had failed the Sergeant's exam on three occasions. (R SF Par. 19, 44, 46). Based on the above, Harris has failed to point to sufficient evidence, even when viewed in its totality, to proceed under the direct method of proof.

### B.  Indirect Method of Proof

Harris also argues that she has pointed to sufficient evidence to proceed on her Title VII gender discrimination claim under the indirect method of proof.  Under the indirect method of proof, a plaintiff must first establish a *prima facie* case by showing: (1) that the plaintiff "is a member of the protected class," (2) that the plaintiff "met her employer's legitimate job expectations," (3) that the plaintiff "suffered an adverse employment action," and (4) that "similarly situated employees outside of the protected class were treated more favorably."  *Naficy*, 697 F.3d at 511-12.  If the plaintiff establishes a *prima facie case*, "the burden shifts to" the defendant "to introduce a legitimate, nondiscriminatory reason for the employment action."  *Id.*  If the employer introduces such a reason, the burden shifts back to the plaintiff to show that the reason is a pretext for unlawful discrimination.  *Id.*  Defendants argue that Harris has not shown that she met her employer's legitimate job expectations or that similarly situated employees outside of the protected class were treated more favorably.

### 1.  Failure to Meet Employer's Legitimate Job Expectations

Defendants argue that Harris has not pointed to sufficient evidence to show that she was meeting the legitimate job expectations of the Village.

a.  Performance Deficiencies

Harris admits to several deficiencies in her work performance.  Harris admits that from 2003 to 2012, she "periodically received reprimands."  (R SF Par. 65).  Harris does not dispute, pursuant to Local Rule 56.1, that such reprimands were because of her failure to "follow[] department policies with regard to tardiness."  (R SF Par. 65).  Harris also admits that the reprimands did not all come from Davis, and that they were also given by two other officers, including Assistant Chief Susan Rockett (Rockett), another woman.  (R SF Par. 65).  Harris also admits that on June 5, 2010, when Harris was in the Commander position, Davis was off duty when Davis observed an unattended squad car in a hotel parking lot and a house party in the Village that was getting out of control, and there were no officers in sight.  (R SF Par. 24).  It is undisputed that when Davis went to the station, he heard Harris and another officer talking and laughing in the office, oblivious to the problems discovered by Davis.  (R SF Par. 24).  It is also undisputed that Davis was angry that Harris had failed to keep in contact with the officers out in the field and failed to keep track of the events going on in the Village.  (R SF Par. 24).

Harris also does not dispute that, in 2009, due to her failure to competently field public questions at a Village Board meeting, the "Trustees felt that Harris was unprepared for the public meetings and unknowledgeable as to what was going on in

the Village." (R SF Par. 38-39). Harris also admits that the Village Trustees "received complaints from members of the public about Harris' inability to answer their questions," and that a Trustee requested that another member of the Department be sent to Village Board meetings to answer questions. (R SF Par. 39). Thus, the undisputed facts indicate that Harris failed to show up for work on time, failed to properly monitor her subordinates, and failed to properly prepare to represent the Department at Village Board meetings.

### b. Complaints from Other Officers

Harris, as second-in-command was placed in a leadership role, and part of her job responsibilities were to properly lead and supervise other officers. (SF Par. 14-15). The undisputed facts show that Davis had a legitimate justification to doubt Harris' ability to act in a leadership role in the Commander position. (R SF Par. 15-17). It is undisputed that Davis received complaints from officers about Harris' improper supervision "on a weekly basis." (R SF Par. 15). It is also undisputed that several officers, including Kurtisa Curtis (Curtis), a female officer, told Davis "that they did not feel comfortable working under Commander Harris." (R SF Par. 15). Harris admits that Davis received complaints that Harris disciplined officers for minor transgressions, that Harris acted unprofessionally, and that Harris favored her

friends at the Department. It is also undisputed that in July 2009, a female dispatcher complained to Davis on multiple occasions about Harris' "unfair treatment," and about Harris' "unprofessional behavior." (R SF Par. 16). It is also undisputed that in 2009, Curtis, a female officer, complained to Davis that Harris had changed Curtis' official reports after she submitted them. (R SF Par. 16). Harris also admits that another officer complained to Davis in July 2010 about intimidation, harassment, and discrimination by Harris. (R SF Par. 17). Harris attempts to diminish the admitted "problems" with her work performance in supervising officers by contending that Davis "had even more problems" with other officers in the Department. (R SF Par. 15). However, pointing at other officers who likewise may not have been doing their jobs correctly does not alter the fact that Harris was failing to meet her employer's legitimate non-discriminatory expectations. Finally, to the extent that Harris contends that the complaints made about her were part of a conspiracy against her because she is a woman, Harris fails to point to evidence to explain why the complaints by her female subordinates were based on an animus against women.

c. Promotions and Qualifications to be Second-In-Command

Harris contends that she worked her way up "through the ranks" and was promoted during her employment at the Department. (Compl. Par. 14). Harris began

as a patrol officer in 1995 and moved to a investigator position in 2002. (SF Par. 6-7). However, the undisputed facts indicate that Harris was the only qualified applicant and obtained the open investigator position by signing her name to the posting. (R SF Par. 7); (Davis Dep. 89); (Ans. SJ 2). Harris did not have to pass a test or go through an interview in order to get the investigator position. (R SF Par. 7). It is also undisputed that when the Commander position was created, Harris was chosen because DuPar insisted that an internal candidate be chosen even though Davis believed that there was no qualified internal candidate. (R SF Par. 12). As indicated above, the undisputed facts also show that once Harris was placed in the Commander position, she failed to properly perform her job. In addition, although Harris asserts that she was qualified to act as the second-in-command at the Department, it is undisputed that in 2009 Harris took the Sergeant's exam and failed all seven categories on the exam. (R SF Par. 19). It is also undisputed that Harris had failed the exam on two prior occasions. (R SF Par. 19). Based on the above, in light of the performance deficiencies by Harris, including her failure to properly supervise subordinates, no reasonable trier of fact could conclude that Harris was meeting the legitimate job expectations of the Village.

### 2. Similarly-Situated Employees

Defendants argue that Harris has failed to point to similarly situated employees outside the protected class that were treated more favorably. Harris has failed to point to any officer that held the Commander position who received more favorable treatment. Harris points to male officers who were Sergeants, asserting that they were paid more than her. (R SF Par. 62-63). However, it is undisputed that Harris repeatedly failed the Sergeant's exam and thus such officers are not similarly situated to Harris. (R SF Par. 19, 62-63). Harris also points to Mark Smith (Smith) in the Coordinator position, who she contends was a similarly situated employee, but the undisputed facts show that the responsibilities for the Coordinator position and the Commander position were not the same. (R SF Par. 41, 43, 45, 47). Harris also contends that Smith was treated more favorably because he was not disciplined for misconduct, but the undisputed facts indicate that the alleged misconduct referred to by Harris was merely based on rumors without any documented evidentiary support, and no complaint against Smith had ever been filed. (R SF Par. 46). Thus, Harris has failed to point to similarly situated employees outside the protected class that were treated more favorably. Based on the above, Harris has failed to establish a *prima facie* case under the indirect method of proof.

3.  Pretext

Defendants indicate that Harris was disciplined due to poor work performance and that certain organizational changes were made at the Department to enable the Department to operate more effectively.  Harris has failed to show that the given reasons for such decisions and actions were a pretext for unlawful discrimination. Harris acknowledges that she was ultimately promoted to the Commander position at the Department, which indicates a desire to promote female officers instead of discriminating against them.  It is also undisputed that Harris' predecessor in the Commander position was Rockett, another woman, and that Rockett became the Assistant Chief for Operations at the Department.  (R SF Par. 10).  Harris fails to offer evidence to explain why Rockett was promoted to high level administrative positions if there was a hidden animus against women at the Department.  The undisputed facts show that Harris' poor work performance was documented by a variety of sources other than Davis.  Harris points only to one isolated instance when Davis referred to Harris using a certain derogatory term.  However, it is undisputed that the remark was made during a time when Davis was angry that Harris was not doing her job properly.  One isolated remark is not sufficient to show that Harris was discriminated against because of her gender.  Therefore, based on the above, Defendants' motion for summary judgment on the gender discrimination claim is

granted.

## III.  Title VII Hostile Work Environment Claim

Defendants argue that Harris has failed to point to sufficient evidence to show that she was subjected to a hostile work environment.  For a Title VII hostile work environment claim, a plaintiff must establish: "(1) that her work environment was both objectively and subjectively offensive; (2) that the harassment was based on her [protected characteristic]; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability."  *Vance v. Ball State University*, 646 F.3d 461, 469 (7th Cir. 2011).

In the instant action, Harris points to only one isolated remark where Davis used a pejorative term when referring to Harris.  Such evidence does not indicate the type of pervasive harassment that can support a hostile work environment claim.  In addition, it is undisputed that Davis did not even intend Harris to hear the remark.  In *Passananti v. Cook County*, 689 F.3d 655 (7th Cir. 2012), the Seventh Circuit specifically addressed whether the use of the pejorative term used by Davis when referring to Harris on the speaker phone is a basis to automatically conclude that there is harassment based on gender.  *Id.* at 665-67.  The court acknowledged that the term had various contemporary meanings that did not necessarily reflect an animus

against someone because of their gender. *Id.* at 665. The court also emphasized that the context of the use of the term is important in evaluating whether the term was indicative of an animus against someone because of their gender. *Id.* at 666-67. In the instant action, the undisputed facts reflect that Davis made the isolated remark when he was angry because he had discovered that Harris had not been doing her job properly, not because he harbored some hidden animus against Harris because of her gender. (SF Par. 24-25). When Davis discovered Harris was failing to properly supervise officers in the field, Davis called the male officer who Davis had heard laughing with Harris in her office, and told the male officer to stay out of Harris' office. (SF Par. 24-25).

Harris also contends that she was harassed and embarrassed based on a series of perceived slights relating to decisions concerning the assignment of job duties, use of flex-time, pulling time cards, attending certain meetings, attending parades, posting of pictures on walls, and the assignment of equipment such as squad cars. However, Harris' claimed subjective embarrassment and distress, even if true, falls far short of indicating the type of objectively pervasive hostile work environment that would interfere with a reasonable person's ability to do her job. In addition, Harris has not shown that any of the above mentioned decisions related in any way to the fact that she is a woman. Therefore, based on the above, Defendants' motion for

summary judgment on the hostile work environment claim is granted.

## IV.  Title VII Retaliation Claim

Defendants argue that Harris has not pointed to sufficient evidence to prevail on her Title VII retaliation claim.  A plaintiff bringing a Title VII retaliation claim can defeat a defendant's motion for summary judgment under the direct or indirect methods of proof.  *Hoppe v. Lewis University*, 692 F.3d 833, 841 (7th Cir. 2012).

### A.  Direct Method of Proof

Harris argues that she has pointed to sufficient evidence to proceed on her Title VII retaliation claim under the direct method of proof.  Under the direct method of proof, a plaintiff must show: (1) that "'she engaged in a statutorily protected activity,'" (2) that "'she suffered a materially adverse action by her employer,'" and (3) that "'there was a causal link between the two.'"  *Id.* (quoting *Benuzzi v. Bd. of Educ. of City of Chi.,* 647 F.3d 652, 664 (7th Cir. 2011))(internal quotations omitted).  Harris has failed to point to sufficient evidence to proceed under the direct method of proof, pointing only to various circumstantial evidence that is insufficient to create a causal link that would enable her to proceed under the direct method of proof.

B.  Indirect Method of Proof

Harris also argues that she has pointed to sufficient evidence to proceed on her Title VII retaliation claim under the indirect method of proof.  Under the indirect method of proof, a plaintiff must first establish a *prima facie* case by showing: (1) that "he engaged in a statutorily protected activity," (2) that "he met his employer's legitimate expectations, i.e., he was performing his job satisfactorily," (3) that "he suffered a materially adverse action," and (4) that "he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity."  *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012).  If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a non-discriminatory reason for" the adverse action.  *Id.*  If the defendant provides such a reason, "the burden shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the defendant's proffered reason was pretextual."  *Id.*

As explained above, the undisputed facts show that Harris was failing to meet her employer's legitimate non-discriminatory expectations and Harris had problems with her work performance, even after she complained about her perceived discrimination and harassment.  For example, Harris was counseled for her failure to comply with the Department sick-time policy in June 2011.  (SF Par. 73); (Harris

Dep. 122-23). Harris further admits that in 2009 as Commander, she created a policy that required officers to submit a notification form upon receiving a subpoena to testify in order to ensure that there was adequate personnel available for duty at the Department, and that in 2012, Harris failed to comply with her own policy when working in her patrol officer position. (R SF Par. 66-67). Harris has also failed to point to similarly-situated employees that were treated more favorably than her. As explained above, neither Corrigan nor Smith were similarly situated to Harris.

Harris contends that Davis created two new Coordinator positions at the Department in order to divest Harris of her responsibilities in retaliation for Harris' complaints about the alleged discrimination. However, it is undisputed that if Harris desired to perform the responsibilities associated with the newly-created Coordinator positions, Harris could have applied for the Detective Division Coordinator position, but did not do so. (R SF Par. 45). It is also undisputed that if Harris had passed the Sergeant's exam, she would have also qualified to apply for the Patrol Operations Coordinator position. (R SF Par. 44). Harris also asserts that she was demoted from the Commander position to the patrol officer position in retaliation for complaining about discrimination. However, the undisputed facts show that in September 2010, the Village eliminated the Commander position and merged the Coordinator positions at the Department. (R SF Par. 61). Harris' position was then changed from

Commander to patrol officer in accordance with her contract, which provided that she was to be returned to her previous civil service rank. (R SF Par. 57-58, 61). Harris has failed to point to evidence to indicate that the decision to eliminate the Commander position was made in retaliation for Harris complaining about discrimination. Harris admits that the Village's policy provides that appointed positions can be eliminated at any time. (R SF Par. 61). The Village also provided legitimate administrative reasons for its decision, and Harris has not shown such reasons to be a pretext for retaliation. DuPar testified, for example, that the Commander position was eliminated as part of an effort to reduce costs, to enable the Department to operate more efficiently, and to meet the budget requirements, and Harris has not offered evidence to genuinely dispute that assertion. (DuPar. Dep. 94-95). It is also undisputed that Harris actually earned more in the patrol officer position than she had been earning in the Commander position. (R SF Par. 64). Thus, there is insufficient evidence to show that the elimination of the Commander position was done in retaliation against Harris. Therefore, based on the above, Defendants' motion for summary judgment on the Title VII retaliation claim is granted.

V.  Section 1983 Claims

Defendants argue that Harris has not pointed to sufficient evidence to prevail on her Section 1983 claims.  In analyzing Section 1983 equal protection claims in the employment discrimination context, the courts generally follow the same type of analysis used for Title VII claims.  *See, e.g., Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012); *Swearnigen-El v. Cook County Sheriff's Dept.*, 602 F.3d 852, 860 n.6 (7th Cir. 2010).  Harris acknowledges that the proper analysis in this case for her Section 1983 claims parallels that of her Title VII claims.  (Ans. SJ 21). As explained above, Harris has failed to point to sufficient evidence to succeed on her Title VII discrimination claims.  The undisputed facts show that Harris failed to properly perform her job.  Harris fails to point to sufficient evidence for a reasonable trier of fact to conclude that Harris' equal protection rights were violated by Davis or DuPar, or that Harris was discriminated against in retaliation for protected activities.

In addition, even if Harris had shown that Davis violated Harris' constitutional rights, Harris has failed to show that DuPar would be liable under Section 1983 for turning a blind eye to Davis' alleged conduct.  Harris admits that, at her request, DuPar met with Harris to hear her complaints about Davis.  (R SF Par. 29).  Harris also admits that at that meeting she promised DuPar that she would later provide him with evidence of discrimination by Davis, and that Harris never provided such

evidence.  (R SF Par. 29).  Finally, even if Harris had pointed to sufficient evidence of a constitutional violation, Harris has failed to point to evidence indicating that there was any Village policy or practice that was the moving force behind any constitutional deprivation or that any individual with final policy-making authority made a decision that violated Harris' constitutional rights.  *See Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011)(explaining the requirements for a *Monell* claim).  The undisputed facts in this case indicate that two woman have recently been promoted to high positions in the Department, which actually suggests a policy to promote woman instead of discriminating against them.  Therefore, based on the above, Defendants' motion for summary judgment on the Section 1983 claims is granted.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion for summary judgment is granted in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated:   February 28, 2013